UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA LYNCH,

        Plaintiff,

v.

SOUTHWESTERN INVESTORS GROUP,
LLC, ELEMENT GLOBAL SERVICES, INC.,
REGIONAL ACQUISITION GROUP, INC.,
MARK CARL LESINSKI, MARCOS F.
SANTANA, JASON F. GAREY and ERIC
T. WESTERMEYER,

        Defendants.
_____/

COMPLAINT

## I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection

Practices Act ("MCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC")

M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities to be identified in discovery, are involved in

a fraudulent and ongoing scheme whereby they use false representations and threats to coerce the

payment of money from consumers across the country who allegedly have failed to repay payday

loans.  This scheme, operated by defendants as well as many other entities located in and around

Buffalo, New York, is based on the use of a script, sometimes known as "The Shakedown" or

"The Shake," that includes variations of the following:  The caller calls from a blocked number

1

or uses a spoofed telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's account will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3. The use of these unlawful debt collection practices by defendants and other debt collectors is epidemic in the Buffalo, New York metropolitan area, as described in the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants.  The United States Department of Justice, the Federal Bureau of

Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the

attorneys general of virtually every state, and the Better Business Bureau all have issued releases

that warn consumers about this ongoing scam.

## II.     Jurisdiction

4.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367.   Venue in this judicial district is proper because the pertinent events took place

here.

## III.    Parties

5.      Plaintiff Dana Lynch is an adult, natural person residing in Kent County,

Michigan.  Ms. Lynch is a "consumer" and "person" as the terms are defined and used in the

FDCPA.  Ms. Lynch is a "consumer," "debtor" and "person" as the terms are defined and used in

the MCPA and MOC.

6.      Defendant Southwestern Investors Group, LLC ("SIG") is an active New York

limited liability company, registered on May 27, 2010, and doing business from an office

building located at 3368 Nash Road, Hamburg, New York 14075 which was purchased by SIG

on or about October 4, 2012.  According to the BBB of Upstate New York, SIG does business at

4408 Milestrip Road, Blasdell, New York 14219-2553, but that address is merely a private

mailbox at The UPS Store #1338. The registered agent for SIG is Corporation Service Company,

80 State Street, Albany, New York 12207-2543.  SIG is in the business of purchasing and

collecting delinquent consumer debts, usually payday loans, and typically pays less than five

3

cents on the dollar.  According to its internet website (www.southwesterninvestorgroup.com), SIG is a mid-sized, privately held debt buyer based in Hamburg, NY, founded in 2009, managed by its investing partners, staffed by 50 employees, specializing in late-stage collections, and managing more than $1 billion in receivables.  Upon information and belief, the managing members of SIG are defendants Mark Carl Lesinski, Marcos F. Santana and Jason F. Garey.  SIG is a member of a debt buyer trade group named DBA International.  SIG is a member of a debt collection trade group named ACA International.  According to the ACA International internet website, the CEO and "Ethics Contact" for SIG is Mark C. Lesinski.  SIG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. SIG is a "debt collector" as the term is defined and used in the FDCPA.  SIG is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, SIG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

7.     According to the records of the New York Secretary of State, UCC Division, various portfolios of consumer accounts and related debts purchased by SIG have been made subject to purchaser money security interests in favor of various entities, as follows:

(a)     Financing statements filed April 17, May 22, June14 and November 19, 2013 and January 15, 2014, naming as the secured party, SWS Strategic Income Fund, LLC, 3535 Piedmont Road, N.E., Suite 410, Atlanta, Georgia 30305-1518.

(b)     Financing statements filed December 3, 2013 and April 4, 2014, naming as the secured party, Portfolio America Asset Poll I, LLC, 270 Cobb Parkway South, Suite 140, Marietta, Georgia 30060-6519.

4

      (c)      Financing statements filed June 25 and July 14, 16 and 23, 2014, naming as the secured party, Caldera Specialty Finance Holding Company, LLC, 2221 New Market Parkway, S.E., Suite 108, Marietta, Georgia 30067-9310.

8.      Defendant Element Global Services, Inc. ("EGS") (FEIN 46-248xxxx) is an active New York corporation, registered on April 8, 2010, and doing business from space it shares with SIG at 3368 Nash Road, Hamburg, New York 14075.  According to documents filed by EGS with the states of Florida, Louisiana and West Virginia, defendants Mark Carl Lesinski, Marcos F. Santana and Eric T. Westermeyer are directors and officers of EGS.  EGS is in the business of collecting delinquent consumer debts, usually payday loans.  According to its internet website (www.elementgsinc.com), EGS was formed to bring a new approach to the collection world, with its main focus to help consumers resolve in a fair, professional and ethical manner, debts that have been placed with EGS or sold to one of EGS's partners.  In 2014 EGS applied to the State of Florida and became licensed as a "Consumer Collection Agency.  EGS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. EGS is a "debt collector" as the term is defined and used in the FDCPA.  EGS is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, EGS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      Defendant Regional Acquisition Group, Inc. ("RAG") is an active New York corporation, registered on September 16, 2013, and believed to be doing business from space it shares with SIG and EGS at 3368 Nash Road, Hamburg, New York 14075.  RAG has filed documents with New York and Connecticut stating that RAG does business at 5165 Broadway,

#276, Depew, New York 14043, but that address is merely a private mailbox rented by RAG at The UPS Store # 1765.  According to documents filed by RAG with the state of Connecticut, defendant Jason F. Garey is the CEO and a Director of RAG.  The registered agent for RAG is National Registered Agents, Inc., One Corporate Center, Hartford, CT 06115.  RAG is in the business of collecting delinquent consumer debts, usually payday loans.  According to its internet website (www.regionalaginc.com), RAG "is a full service, collections and accounts receivable management firm."  RAG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  RAG is a "debt collector" as the term is defined and used in the FDCPA.  RAG is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, RAG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

10.     Defendant Mark Carl Lesinski is an adult, natural person, residing at 2190 Marina Drive, Lake View, New York 14085-9619.  Mr. Lesinski is an owner, officer, member, manager, employee and agent of SIG, EGS and RAG.  Until recently, Mr. Lesinski maintained a presence on the internet website www.linkedin.com, wherein Mr. Lesinski touted "Debt Collections," "Operations Management" and "Debt Purchasing" as his "Specialties."  Other debt collection companies owned and operated by Mr. Lesinski include N&G Capital LLC; Midpoint Resolution Group, LLC; Lakeshore Capital, LLC; Federal Credit Recovery; M & S Recovery Solutions, LLC; MK Capital Associates, LLC and HW Capital, LLC.  Mr. Lesinski and his companies have been sued multiple times in various United States District Courts for running unlawful debt collection scams.  See, for example, *Guy Miller v. Midpoint Resolution Group, LLC, et al.,* USDC, EDNY, Case No. 2:08-cv-03791-AKT.  Until recently, Mr. Lesinski maintained an

internet website where he "blogged" about his debt collection activities and other matters.  Mr. Lesinski uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Lesinski regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Lesinski is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Lesinski is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Lesinski is a "collection agency" and "licensee" as the terms are defined and used in MOC.

11.     During all times pertinent hereto, Mr. Lesinski (a) created the collection policies and procedures used by SIG, EGS and RAG, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed the daily collection operations of SIG, EGS and RAG, (c) oversaw the application of the collection policies and procedures used by SIG, EGS and RAG, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by SIG, EGS and RAG, and their employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SIG, EGS and RAG, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by SIG, EGS and RAG, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

12.     During all times pertinent hereto, Mr. Lesinski directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are

described in this complaint.

13.     Defendant Marcos F. Santana, also known as Marcus Santana, also known as Marcas Santana, is an adult, natural person, residing at 50 Deer Run, Orchard Park, New York 14127-3454.  Mr. Santana is an owner, officer, member, manager, employee and agent of SIG, EGS and RAG.  Other debt collection companies owned and operated by Mr. Santana include WF Capital LLC (sometimes doing business as Wyman and Foster) and Sterling & Seymour LLC.  Mr. Santana uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Santana regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Santana is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Santana is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Santana is a "collection agency" and "licensee" as the terms are defined and used in MOC.

14.     During all times pertinent hereto, Mr. Santana (a) created the collection policies and procedures used by SIG, EGS and RAG, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed the daily collection operations of SIG, EGS and RAG, (c) oversaw the application of the collection policies and procedures used by SIG, EGS and RAG, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by SIG, EGS and RAG, and their employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SIG, EGS and RAG, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge

8

of, approved, participated in, and ratified the unlawful debt collection practices used by SIG, EGS and RAG, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

15.     During all times pertinent hereto, Mr. Santana directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

16.     Defendant Jason F. Garey is an adult, natural person, residing at 4521 Copperfield Drive, Hamburg, New York 14075-5444.  Mr. Garey is an owner, officer, member, manager, employee and agent of SIG, EGS and RAG.  Mr. Garey uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Garey regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Garey is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Garey is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Mr. Garey is a "collection agency" and "licensee" as the terms are defined and used in MOC.

17.     During all times pertinent hereto, Mr. Garey (a) created the collection policies and procedures used by SIG, EGS and RAG, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed the daily collection operations of SIG, EGS and RAG, (c) oversaw the application of the collection policies and procedures used by SIG, EGS and RAG, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by SIG, EGS and RAG, and their employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to

collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SIG, EGS and RAG, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by SIG, EGS and RAG, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

18.    During all times pertinent hereto, Mr. Garey directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

19.    Defendant Eric T. Westermeyer is an adult, natural person, supposedly residing at 6406 White Oak Way, Lake View, New York 14085-9573.  Mr. Westermeyer is an owner, officer, member, manager, employee and agent of SIG, EGS and RAG.  Mr. Westermeyer uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Westermeyer regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Westermeyer is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Westermeyer is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Westermeyer is a "collection agency" and "licensee" as the terms are defined and used in MOC.

20.    During all times pertinent hereto, Mr. Westermeyer (a) created the collection policies and procedures used by SIG, EGS and RAG, and their employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed the daily collection operations of SIG, EGS and RAG, (c) oversaw the application of the collection policies and

procedures used by SIG, EGS and RAG, and their employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by SIG, EGS and RAG, and their employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Lynch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by SIG, EGS and RAG, and their employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by SIG, EGS and RAG, and their employees and/or agents in attempts to collect an alleged debt from Ms. Lynch as alleged in this complaint.

21.     During all times pertinent hereto, Mr. Westermeyer directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Lynch that are described in this complaint.

22.     The internet website domain for EGS (www.elementgsinc.com) was registered on April 16, 2013.  The internet website domain for RAG (www.regionalaginc.com) was registered on November 27, 2013.  For each internet website domain, the registrant was Jason Garey, Southwestern Investor Group, 4497 Abbott Road, Orchard Park, New York 14127, telephone number 716-474-6470, and email address jasongarey@southwesterninvestorgroup.com.

23.     SIG, EGS and RAG are commonly owned, operated, managed and controlled by Mr. Lesinski, Mr. Santana, Mr. Garey and Mr. Westermeyer, and perhaps others, to be identified in the course of discovery and to be added as additional defendants if warranted.

24.     The Fair Debt Collection Practices Act states that a shareholder, officer, or employee of a corporate debt collector can be held liable for violating the FDCPA, without

piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008).

## IV.  Facts

25.    On or about June 5, 2007, Ms. Lynch's then-husband used Ms. Lynch's name, social security number and other personal and financial information to obtain a payday loan from an entity named Check 'N Go in the amount of approximately $500.00.  Ms. Lynch's then-husband obtained the loan without Ms. Lynch's consent or knowledge.  Ms. Lynch's then-husband used the borrowed funds to purchase goods and services for personal, family and household purposes.  Any resulting obligation repay the money borrowed by Ms. Lynch's then-husband using Ms. Lynch's name was a "debt" as the term is defined and used in the FDCPA, MCPA and MOC.

26.    Ms. Lynch's ex-husband failed to repay the debt.

27.    Ms. Lynch disputed and refused to repay the debt.

28.    Ms. Lynch continues to dispute and continues to refuse to repay the debt.

29.    Check 'N Go charged off the account and related debt.

30.     Check 'N Go sold the account and related debt.

31.     The account and related debt has been delinquent for a period of more than six years.  No payment has been made on the account and related debt for a period of more than six years.  The account and related debt are no longer judicially enforceable by operation of the applicable statute of limitation.  Stated differently, the account and related debt are time-barred.

32.     SIG claims to have purchased the time-barred account and related debt.

33.     SIG supposedly placed the account for collection with its related company, EGS.

34.     EGS supposedly placed the account for collection with its related company, RAG.  Alternatively, SIG directly placed the account for collection with its related company, RAG.

35.     On or before September 18, 2014, defendants made a call to a telephone land line at the home of Ms. Lynch's elderly mother in Illinois and left the following recorded message on Ms. Lynch's mother's telephone answering machine: "This message is for Dana Lynch.  You are the accused in the complaint of breach of contract.  It has been noted that you attempted to disclaim the complaint on at least one occasion.  It would be in your best interest to contact our offices before a motion of disposition is made.  Our number is 877-630-5666.  Once again, our number is 877-630-5666."

36.     Ms. Lynch's mother heard the above-quoted message and became very upset.

37.     A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

38.     The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

13

39.     A debtor collector when communicating with any person for the purpose of acquiring location information about the consumer shall identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer. 15 U.S.C. § 1692b(1).

40.     Defendants and their employee and agent communicated with Ms. Lynch's mother for a purpose other than to acquire location information regarding Ms. Lynch, used language that exceeded what is allowed by law, and thereby violated the FDCPA.

41.     Ms. Lynch's mother placed a call to Ms. Lynch, and played the message for Ms. Lynch over the telephone.

42.     Upon receiving the call from her mother and hearing the above-quoted message, Ms. Lynch became very upset, first, because the message had upset her elderly mother, and second, because of the content of the message.

43.     On or about September 23, 2014, Ms. Lynch responded to the above-quoted message and placed a call to telephone number 877-630-5666.  Defendants' employee answered the call with the words "Regional.  May I help you?"  Defendants' employee stated that his name was Marcus Jones and that his direct telephone number was 716-362-0806.  In the ensuing conversation, defendants' employee made the following representations:

a)      "My name is Marcus Jones.  I'm head of the Legal Department here."

b)      "The reason why you received a call Ms. Lynch, is in an affidavit for court appearance, issued in your name and social security number, regarding a breach of contract and a judgment hearing with a check protest regarding Check 'N Go."

14

c)      The payday loan in the amount of $500.00 was taken out on June 5, 2007. The current balance is $706.45.

d)      The original account number was 7045663.

e)      We are a conglomeration, working with Check 'N Go and other payday lenders.

f)      If you settle the debt with us, we will update your credit report and show this account as paid in full, or we can give you the option of having the tradeline removed from all three major credit bureaus.

g)      "I'm collecting for Southwestern Investors Group.  They purchased the account from Check 'N Go."

h)      If you provide me with your banking information and arrange for payment to be made by the 30th of this month, I can stop the summons from being served on you.

i)      The summons will be served on you by a state process server.  They make three attempts.  Two attempts at your residence and one attempt at your last place of employment, which is identified through a federal data base containing your last paycheck.

j)      If you don't respond to the summons, a default judgment will be entered against you and the money will then be taken from you through liens, repossessions, tax garnishments, wage garnishments and asset attachment.

k)      If you don't respond to the summons, a default judgment will be entered against you and then your professional licenses and drivers license will be

15

suspended.

44.     The threats and representations made by defendants' employee and agent were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, and unlawful harassment of the consumers and their relatives and other third parties.

45.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that defendants have a "Legal Department."

46.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that he was the "head" of defendants' "Legal Department."

47.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that he is an attorney.  Much more likely, the employee and agent failed to graduate from high school.

48.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that a lawsuit had been filed and summons issued against Ms. Lynch.

49.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that Ms. Lynch was going to be served with the lawsuit either at her residence or her place of employment.

50.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that Ms. Lynch was scheduled to be served

16

with a summons and complaint to collect the alleged debt.

51.     Defendants do not intend to file a lawsuit against Ms. Lynch in any Michigan court in efforts to collect the alleged debt.

52.     Defendants have never intended to file a lawsuit against Ms. Lynch in any Michigan court in efforts to collect the alleged debt

53.     No defendant has never filed any lawsuit in any Michigan court to collect any debt from any person.

54.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that a lawsuit had been filed against Ms. Lynch to collect a time-barred debt.

55.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that a court had issued some sort of order, requiring Ms. Lynch to appear in court.

56.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that the original account number for the loan was 7045663.

57.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that they are a conglomeration working with Check 'N Go and other payday lenders to collect delinquent payday loans.

58.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that derogatory information regarding the account was currently being reported by the consumer reporting agencies as part of Ms. Lynch's

credit history.

59.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that if she paid money to defendants, then defendants would update her credit report and show the account as paid in full.

60.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that if she paid money to defendants, then defendants would instruct the three major consumer reporting agencies to remove the tradeline regarding the account from Ms. Lynch's credit history, when in fact, none of the three major consumer reporting agencies is reporting the debt as part of Ms. Lynch's credit history and there is no "tradeline" to remove.

61.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that a "state process server" would be serving Ms. Lynch with a summons and complaint.

62.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that a state process server would be serving Ms. Lunch with a summons and complaint at her "last place of employment" as identified through a "federal data base" containing Ms. Lynch's last paycheck.

63.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that if she did not respond to the summons and complaint being served on her, a default judgment would be entered against her and money then taken to satisfy the judgment, through liens, repossessions, tax garnishments, wage garnishments and asset attachment.

64.     Defendants and their employee and agent in the described telephone conversation falsely represented and falsely implied to Ms. Lynch that if she did not respond to the summons and complaint being served on her, then Ms. Lynch would be coerced into paying the judgment through the suspension of her professional licenses and suspension of her drivers license.

65.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

66.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

67.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

68.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

69.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

70.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

71.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

72.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

73.     The FDCPA states that it is unlawful for a debt collector to use any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court of the United States or any State, or which creates a false impression as to its source, authorization, or approval. 15 U.S.C. § 1692e(9).

74.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

75.     The FDCPA states that it is unlawful for a debt collector to fail to disclose in an oral communication with the consumer that the communication is from a debt collector and that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11)

76.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

77.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

78.     The FDCPA states that it is unlawful for a debt collector to collect any amount

unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

79.   The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

80.   Defendants have violated the FDCPA, 15 U.S.C. §§ 1692d(6), 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (9), (10), (11) and (13), and 1692f and 1692f(1).

81.   SIG, through its employees and agents, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

82.   The acts and omissions of SIG, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

83.   SIG intentionally and wilfully violated the FDCPA, MCPA and MOC.

84.   EGS, through its employees and agents, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

85.   The acts and omissions of EGS, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

86.   EGS intentionally and wilfully violated the FDCPA, MCPA and MOC.

87.   RAG, through its employees and agents, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

88.   The acts and omissions of RAG, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

89.   RAG intentionally and wilfully violated the FDCPA, MCPA and MOC.

90.   Mr. Lesinski, directly and indirectly, attempted to collect the alleged debt from

Ms. Lynch.

91.     Mr. Lesinski created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

92.     The messages left by defendants and their employees and agents on telephone answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Lesinski.

93.     The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Lesinski.

94.     Mr. Lesinski oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

95.     The acts and omissions of Mr. Lesinski, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

96.     Mr. Lesinski intentionally and wilfully violated the FDCPA, MCPA and MOC.

97.     Mr. Santana, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

98.     Mr. Santana created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

99.     The messages left by defendants and their employees and agents on telephone

22

answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Santana.

100.    The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Santana.

101.    Mr. Santana oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

102.    The acts and omissions of Mr. Santana, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

103.    Mr. Santana intentionally and wilfully violated the FDCPA, MCPA and MOC.

104.    Mr. Garey, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

105.    Mr. Garey created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

106.    The messages left by defendants and their employees and agents on telephone answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Garey.

107.    The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Garey.

108. Mr. Garey oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

109. The acts and omissions of Mr. Garey, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

110. Mr. Garey intentionally and wilfully violated the FDCPA, MCPA and MOC.

111. Mr. Westermeyer, directly and indirectly, attempted to collect the alleged debt from Ms. Lynch.

112. Mr. Westermeyer created, approved, ratified and benefitted from the collection policies and procedures used by defendants and their employees and agents, in their concerted efforts to collect the alleged debt from Ms. Lynch and other consumers.

113. The messages left by defendants and their employees and agents on telephone answering machines and voice mail for Ms. Lynch and other consumers were created, scripted, approved, and ratified by Mr. Westermeyer.

114. The scripts and "talk offs" used by defendants and their employees and agents in telephone conversations with Ms. Lynch, other consumers, and other third parties, were created, scripted, approved, and ratified by Mr. Westermeyer.

115. Mr. Westermeyer oversaw the application of the collection policies and procedures used by defendants and their employees and agents in their efforts to collect the alleged debt from Ms. Lynch.

116. The acts and omissions of Mr. Westermeyer, done in connection with efforts to collect the alleged debt from Ms. Lynch, were done intentionally and wilfully.

117.     Mr. Westermeyer intentionally and wilfully violated the FDCPA, MCPA and MOC.

118.     Defendants failed to send Ms. Lynch a timely and written notice containing the information required by the FDCPA, 15 U.S.C. § 1692g(a).

119.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

120.     Defendants, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

121.     As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.     Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

122.     Plaintiff incorporates the foregoing paragraphs by reference.

123.     Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692b.

b)      Defendants violated 15 U.S.C. § 1692c.

c)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

e)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Michigan Collection Practices Act

124.    Plaintiff incorporates the foregoing paragraphs by reference.

125.    Defendants have violated the MCPA.  Defendants' violations of the MCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

26

b)      Defendants violated M.C.L. § 445.252(b) by using forms or instruments which simulate the appearance of judicial process;

c)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

d)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

e)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

f)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

g)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

h)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.252;

b)      Treble the actual damages pursuant to M.C.L. § 445.252;

c)      Statutory damages pursuant to M.C.L. § 445.252;

d)      Equitable relief pursuant to M.C.L. § 445.252; and

27

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.252.

### Count 3 – Michigan Occupational Code

126.    Plaintiff incorporates the foregoing paragraphs by reference.

127.    Defendants have violated the MOC.  Defendants' violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(b) by using forms or instruments which simulate the appearance of judicial process;

c)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

d)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

e)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

f)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

g)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

h)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

i)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: September 26, 2014

                                          _____
                                          Phillip C. Rogers (P34356)
                                          Attorney for Plaintiff
                                          40 Pearl Street, N.W., Suite 336
                                          Grand Rapids, Michigan 49503-3026
                                          (616) 776-1176
                                          ConsumerLawyer@aol.com